Filed 10/7/14  P. v. Kamp CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058201 |
| v. | (Super.Ct.No. SCR49951) |
| MELVIN HUGO KAMP, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steve C. Malone, Judge.  Affirmed.

Laurel M. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Parag Agrawal, Deputy Attorneys General, for Plaintiff and Respondent.

In 1991, defendant Melvin Kamp was committed to the California Department of Mental Health, pursuant to Penal Code section 1026, following a finding that he was not guilty by reason of insanity of attempted murder. In 2012, he was ordered released to the Conditional Release Program (Conrep) and he agreed to certain terms and conditions of that release, including that he "comply with, and actively participate in, all treatment requirements . . . communicated to [him] by [his] Outpatient Supervisor" and "comply with [his] prescribed medication . . . ." In 2013, a clinical therapist at Conrep wrote to the court, informing it that defendant was being returned to Patton, where he had received treatment previously, because of increased psychiatric symptoms "combined with his refusal to comply with treatment . . . " specifically that "he . . . resisted medical treatment and went AWOL from [Riverside Community Hospital] and was missing for two days." The prosecutor thereafter requested a hearing to revoke defendant's conditional release. At the conclusion of that hearing, the trial court revoked defendant's release and defendant here contests this ruling, claiming it was based on inadmissible hearsay and is unsupported by substantial evidence. We assume, without deciding, that hearsay, not admissible as an exception, was inadmissible at the hearing. We reject his contentions and affirm.

FACTS

At the hearing, a clinical supervisor for Conrep testified that on January 23, 2013, she spoke to defendant and concluded that he was disoriented,[1] and she believed that there was something medically wrong with him. Not admitted for its truth, but to explain what the supervisor did, she testified that a Conrep registered nurse took defendant's blood pressure, which was quite elevated, and the nurse recommended that defendant be seen by a doctor.[2] As a consequence, defendant was transported to Riverside Community Hospital, to which defendant agreed.[3] The supervisor ultimately opined that defendant

---

[1] Defendant ignores this testimony, and focuses on the supervisor's testimony that her meeting with defendant was prompted by a statement by defendant's attending physician that defendant seemed disoriented, which, although not objected to below, defendant now asserts was hearsay ("of course", states appellate counsel). It was not, as we are certain it was admitted not for its truth, but to explain what the supervisor did, which was to talk to defendant. Additionally, as much as defendant seems to want the supervisor's testimony that *she* concluded, *on her own*, after speaking with defendant, that defendant was disoriented, to go away, it will not. Defendant also, now, for the first time, takes issue with the supervisor's testimony that defendant had been delusional. However, defendant waived any objection to this by failing to object to it below. (Evid. Code, § 353.) More importantly, it is irrelevant to the reason why the trial revoked defendant's conditional release and, therefore, we will not waste time discussing it. The same is true of the supervisor's subsequent testimony, which was objected to by defendant below, on the bases of speculation and beyond the scope of her expertise, that defendant had been diagnosed with a delusional disorder, persecutorial type, "a dual on Axis 1" (not further explained) and methamphetamine, alcohol and cannabis abuse.

[2] We disagree with defendant's assertion that this testimony was hearsay and should not have been admitted. Just as the trial court stated, it was admitted for the non-hearsay purpose of showing what happened next to defendant, i.e., that he was taken to the hospital for medical treatment, which was entirely relevant.

[3] Defendant correctly points out that he unsuccessfully objected to the supervisor's testimony that defendant agreed to be transported to the hospital on the basis

*[footnote continued on next page]*

could not be safely managed in the community on conditional release based on defendant going AWOL from the hospital. The supervisor's conclusion that defendant had gone AWOL from the hospital was based on her testimony, which the trial court did not admit for its truth, but as the basis for her conclusion, that the board and care facility where defendant was living when he was taken to the hospital contacted her to say that it had been contacted by the hospital and told that defendant had left the hospital. *Without objection by defendant*, the supervisor described unsuccessful efforts that were made to locate defendant the night following his admission to the hospital and the following day.[4] She said that a forensic hot line employee and a nurse at the hospital had informed the Conrep clinical therapist and a doctor, who, presumably informed the supervisor, that defendant was found wandering in a church parking lot not too far from the hospital on January 25 and was returned to the hospital.

An emergency room nurse at the hospital where defendant was taken on January 23, 2013 testified that she saw defendant on that date and he was altered and a little confused. Defendant's sodium and potassium levels were low and he required an IV. An

---

*[footnote continued from previous page]*
that it had been asked and answered and that it called for hearsay. However, it had not been asked and answered and it was admissible as a statement by the party (Evid. Code, § 1220).

[4] After describing these efforts, the supervisor was asked, "You at this point are still actively looking for him and you haven't received any information from anyone? Defendant unsuccessfully objected on the bases that the question was leading, had been asked and answered and was argumentative. The supervisor replied that she had not.

IV containing sodium chloride was inserted into his arm by her colleague. It ended up outside defendant, was reinserted, with an explanation to defendant as to its purpose, that he was being admitted to the hospital and he needed to leave the IV in, but then she saw him pull it out.[5] She notified the charge nurse that defendant required a "sitter," but there was inadequate staff to accomplish this. At that point, defendant had already been admitted to the hospital. When the admission order came through, defendant was in a hospital gown. The nurse left the area where defendant was and asked a volunteer to check on defendant. The volunteer came back and told the nurse that defendant was not there. The nurse immediately returned to where defendant had been, which was sometime after 5:00 p.m., and found the hospital gown on the floor and defendant's clothes missing. She notified her charge nurse and security at the hospital, but the latter were unable to find defendant, then she notified the facility where defendant lived. She testified, without objection, that defendant had left the hospital sometime the night of January 23.

---

[5] Contrary to defendant's contention, he did not object below to the nurse's testimony about him removing his IV. After she testified that defendant required an IV, she began to testify that the doctor requested that she and whoever else was treating defendant keep track of defendant's urinary output. At that point, defense counsel objected on the bases of hearsay, the trial court overruled it, finding it was not being admitted for the truth, but as foundation for what she did, and she went on to testify that there was an order to insert a Foley catheter. However, because defendant was altered and had removed his IV two times, she decided not to insert the Foley, fearing that he would harm himself by trying to remove it, also.

The clinical therapist, who had originally written to the court concerning defendant's condition, opined that defendant's outpatient treatment should be revoked, inter alia, because defendant went AWOL from the hospital and was missing for two days.

Defendant testified that he had no recollection of the events of January 16-25, except he recalled standing in a church parking lot "waiting to be saved." He did not recall being taken to the hospital on January 23, taking out his IV, taking off his hospital gown or leaving the hospital.

The trial court found, "[T]he terms and conditions [of defendant's conditional release] . . . prohibit [him] from leaving without permission. [¶] We've heard testimony from . . . [the] nurse at [the h]ospital that on January [2]3rd, 2013, [defendant] . . . removed his IV two times by force. . . . [She] went back to his room to check on him and his clothes were gone and the [hospital] gown was on the floor. [Defendant] was no longer there. [¶] [The] Court finds he is in violation of his terms and conditions of the outpatient program. . . . He needs to cooperate in the plan of accepting medical treatment when necessary. I believe that [based on] the fact that he left without permission, has no memory of it, he . . . cannot be safely and effectively treated in the community at the present time."

## ISSUES AND DISCUSSION

Defendant goes on at length to reiterate most of the testimony of the supervisor, claiming that much of it was inadmissible hearsay. We have not cluttered this opinion

6

with testimony that is not relevant to the trial court's ruling, but have zeroed in on the testimony that is, which is restated above. As part of that restatement, we have responded to each of defendant's claims that that testimony was inadmissible on the basis advanced below or advanced, for the first time, here.

As to defendant's claim that the supervisor's testimony that others had told her that defendant had left the hospital and had been found two days later, wandering in a nearby church parking lot, without going into the merits of defendant's hearsay argument, we note that the emergency room nurse testified that defendant left the hospital (testimony upon which the court heavily relied), her testimony on this score was not hearsay, and had not been objected to below, and defendant did not object to the supervisor's testimony about the unsuccessful efforts that were made over the next two days to locate defendant, therefore, defendant could not possibly have been prejudiced by admission of this evidence (*People v. Watson* (1956) 46 Cal.2d 818, 836), even if it was inadmissible hearsay.

To the extent that defendant attempts to argue that his testimony that he might have had food poisoning and/or that his low levels of potassium and sodium might have caused his behavior (an impossible point to make successfully, absent expert testimony),[6]

---

[6] Defendant's statement, in his reply brief, that the emergency room nurse "provided . . . expert testimony indicating [defendant's] 'altered state' was the result of a medical rather than psychiatric problem" is not supported by the record. First, the nurse was never qualified as an expert to differentiate between defendant's psychiatric condition, of which she had very limited and completely second hand knowledge, from his physical condition. Second, however qualified or not, she *never* offered an opinion

*[footnote continued on next page]*

this is not the appropriate time or place.  Defendant's argument that the court's ruling is not supported by substantial evidence is unfounded, as review of the above-reiterated testimony clearly demonstrates.  Defendant cites no authority holding that his violation of the terms and conditions of his release must be willful or that his psychiatric condition must have caused him to be a danger to himself or others in order to have his conditional release revoked.  Penal Code section 1608 requires only a showing by the preponderance of evidence that defendant refuses to accept further outpatient treatment and supervision.

### DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


We concur:

McKINSTER
J.

RICHLI
J.

---

*[footnote continued from previous page]*
that defendant's *relevant* behavior, i.e., removing his IV and hospital gown, putting his clothes back on and leaving the hospital, and being in an altered state, were due to his low sodium and potassium levels and not due to his psychiatric condition.  Finally, it really doesn't matter what the cause of defendant's behavior was.  What mattered was that defendant failed to comply with the terms and conditions of his release.